**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DESMOND TENENG,

      Petitioner,

      v.                                       No. 2:26-cv-00601-SMD-LF

TODD BLANCHE, *et al.*,

      Respondents.

## ORDER GRANTING TEMPORARY RESTRAINING ORDER

This matter came before the Court on Petitioner's Emergency Motion for Temporary Restraining Order ("TRO"). Doc. 15. Petitioner seeks a TRO enjoining Respondents from removing him to Equatorial Guinea. The Court previously lifted the stay on his transfer on July 27, 2026. *See* Doc. 14. After reviewing the motion and relevant law, the Court **GRANTS** Petitioner's request for TRO and reinstates the stay of transfer.

### BACKGROUND

Petitioner Desmond Teneng, a native of Cameroon, has been detained since approximately December 2, 2024 after entering the United States without inspection. Doc. 1 ¶ 10; Doc. 8-2 ¶ 5. On March 25, 2025, an immigration judge found Petitioner removable but granted withholding of removal and protection under the Convention Against Torture ("CAT") regarding Cameroon. *See* Doc. 1-2 at 1. The order became administratively final on approximately April 25, 2025. Doc. 1 ¶ 10.

On February 27, 2026, Petitioner filed a request for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Doc. 1. Respondents opposed the motion and represented that they have been actively working with the Department of State to find a third country and remove Petitioner. Doc. 8 at 4. Respondents acknowledged that Petitioner's detention was "undoubtedly beyond the

six-month point," but asked the Court to permit continued detention while the Department of Homeland Security ("DHS") pursued removal efforts. *Id.*

Petitioner has now been in Respondents' custody for 17 months, 13 of which followed the final removal order on April 25, 2025. *See id.* at 2. Assistant Field Officer Director Francisco Ruiz's declaration states that Enforcement and Removal Operations has repeatedly requested updates and guidance on Petitioner's removal, but it does not appear those efforts were fruitful until July 20, 2026, when Respondents filed an Emergency Motion to Quash Order Enjoining Transfer in an attempt to remove Petitioner to Equatorial Guinea . Doc. 13. Petitioner now seeks an emergency TRO, alleging that he faces a substantial of risk of custodial abuse and torture if removed to Equatorial Guinea. Doc. 15 ¶ 18.

## DISCUSSION

On July 27, 2026, the Court granted Respondents' Emergency Motion to Lift Order Enjoining Transfer, ruling that it lacks jurisdiction to enjoin the execution of a final order of removal. *See* Doc. 14. Tenth Circuit has repeatedly stated that district courts lack jurisdiction to review removal orders, to hear challenges to removal orders, or to stay removal orders. *Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1017 (10th Cir. 2007) ("Congress has provided an avenue for direct review of final orders of removal through petitions for review in courts of appeals. Indeed, 'petitions for review filed with the court of appeals are the sole and exclusive means of review of most administrative orders of removal.'"); *Castillo v. De Andra-Ybarra*, No. CV 25-1074 JB/JFR, 2026 WL 413407, at *13 (D.N.M. Feb. 13, 2026).

Petitioner has a final order of removal, and this Court does not purport to review the substance of the immigration judge's ruling or to stay the execution of the final removal order. Nevertheless, counsel for Petitioner indicated in the Emergency Motion that "ICE has not served Petitioner or counsel with any written notice designating Equatorial Guinea as a country of

removal, has not afforded Petitioner an opportunity to articulate a fear of return to Equatorial Guinea, and has not initiated any screening process." Doc. 15 ¶ 8.

While a district court cannot intervene in ongoing removal proceedings by reviewing or hearing challenges to the merits of a removal order, *Valdovinos-Blanco v. Holder*, 557 F. App'x 793, 794 (10th Cir. 2014), the removal proceedings must still be conducted within the bounds of due process. Petitioner contends that his impending removal to Equatorial Guinea violates his due process and statutory rights. Doc. 15 ¶¶ 15–16. Under the Due Process Clause of the Fifth Amendment, noncitizens are entitled to reasonable notice of the country of removal and a meaningful chance to state their fear-based claims regarding that new country. *See D.V.D. v. DHS.*, 821 F. Supp. 3d 102, 147 (D. Mass. 2026). This requirement is especially critical because Petitioner alleges that he would face "a substantial risk of arbitrary detention, custodial abuse, and torture in Equatorial Guinea." Doc. 15 ¶ 18.

The Court is aware that removal flights take months to arrange, a point Respondents have made clear. However, Respondents had ample time within that timeline to properly notify Petitioner and his counsel, as well as evaluate any fear-based claims regarding Equatorial Guinea. It is not this Court's injunction that hinders Petitioner's removal. If Respondents had properly evaluated Petitioner's fear-based claims, and if the record had demonstrated proper notice and screening, the Court would not have reinstated the stay of removal.

Petitioner is likely to prevail on his due process claim that he cannot be removed to a third country without being afforded an opportunity to present his fear-based claims. "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.");

3

*A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1136 (E.D. Cal. 2025).

While it is true that DHS has the authority to remove a noncitizen "to any other country as permitted by [8 U.S.C. § 1231(b)]," and that no regulation provides explicit procedures for the third country removal process, DHS "must exercise that authority in the appropriate way." *Wani Site v. Holder*, 656 F.3d 590, 594 (7th Cir. 2011). Specifically, DHS's designation must be permitted by § 1231, and the designation must comport with due process. *See Reyes-Melendez v. INS*, 343 F.3d 1001, 1008 (9th Cir. 2003) ("[A] due process violation is not an exercise of discretion.").

The Court then determines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution by applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

Turning to the first and second *Mathews* factor, Petitioner has a significant private interest in not being erroneously removed to a third country with which he has no connection and where he faces potential persecution, torture, and death. The risk of erroneous deprivation is high. Furthermore, it is explicitly unlawful for DHS to remove Petitioner to a country where his life or freedom would be threatened. 8 U.S.C. § 1231(b)(3); *Jama v. ICE*, 543 U.S. 335, 348 (2005) (explaining that individuals who "face persecution or other mistreatment in the country designated" for removal "have a number of available remedies" to "ensur[e] their humane treatment"). Thus, these factors favor a finding that Petitioner's private interest is severely affected by his removal to a third country without a fear-based screening. *See A.A.M.*, 815 F. Supp. 3d at 1138.

The balance of equities and public interest also favor relief. The burden on Respondents to provide Petitioner with a fear-based screening interview regarding Equatorial Guinea is minimal compared to the risk of inhumane treatment he faces upon removal. Petitioner previously had a

4

fear-based review during his asylum application, and this screening can be repeated. *See* Doc. 1-2. Furthermore, Respondents remain free to execute the removal order, provided that Petitioner can safely remain in Equatorial Guinea or be removed to an alternative country where he has no fear of mistreatment. Finally, it is never in the public interest to permit the government to proceed under a flawed or unexplained administrative process. *See Garcia Domingo v. Castro*, 806 F. Supp. 3d 1246, 1253 (D.N.M. 2025).

The Court will therefore grant the TRO and reinstate the injunction on removal until Petitioner has an opportunity to present his fear-based claims.

**CONCLUSION**

It is hereby **ORDERED**:

1) Petitioner's request for a temporary restraining order is **PARTIALLY GRANTED**;

2) Respondents must ensure that Petitioner's fear-based claims regarding removal to Equatorial Guinea are evaluated by a neutral decision-maker, in accordance with the requirements of due process;

3) Respondents shall file a status report with the Court within 14 days of Petitioner's fear-based interview or screening. The status report shall inform the Court of the agency's determination, at which point the Court will evaluate whether to dissolve the stay of removal;

4) Respondents are temporarily enjoined from removing Petitioner to a third country, absent this Court's order to the contrary.

**IT IS SO ORDERED.**

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**